STATE OF CONNECTICUT *v.* FLOYD WILLIAMS
(9751)

DUPONT, C. J., LAVERY and LANDAU, Js.

Argued January 13—decision released May 26, 1992

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald D. Browne,* state's attorney, and *Henry J. Lyons,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Floyd Williams, appeals from a judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).

The defendant claims that the trial court improperly (1) permitted the state to comment on the defendant's pretrial silence in violation of his constitutional right to remain silent and his right to due process, (2) admitted evidence indicative of, and instructed the jury on, the defendant's consciousness of guilt, (3) enlarged the offenses with which the defendant was charged by including in its instruction uncharged theories of liability in violation of his right to notice and due process, and (4) instructed the jury on inferences and circumstantial evidence. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the evening of May 25, 1988, James Allen and Debra Lindsay went to Faces Cafe in Bridgeport. At some point during the evening they went to another bar, and then returned to Faces. Upon their return, Lindsay entered the bar. Before Allen entered the bar, he was approached by the defendant, who placed a 9 millimeter gun to his head and demanded his money. At about the same time, another individual, Robert Payton, fired a shotgun into the air. The defendant took $20 and a sweater from the victim, Allen, and as he backed away toward the car of his companion, David Goodman, he shot the victim once in the right arm.

The defendant and Goodman fled in Goodman's car and drove to the police station. Goodman went inside to report that someone had been shot, and the defendant remained in the car. Neither confessed to the shooting. The victim was interviewed by the police after undergoing extensive surgery and at that time identified the defendant by name as the individual who shot him.[1] An arrest warrant was issued for the defendant.

[1] Allen identified the defendant as Floyd Jackson. Floyd Jackson and the defendant are the same person. Allen testified that he believed that the defendant's last name was Jackson because his grandfather's name was Jackson. Allen later identified the defendant as his assailant after viewing him in a lineup.

A second arrest warrant was issued for the defendant in connection with a murder committed on August 28, 1989. On October 28, 1989, two months after the murder and almost one and one-half years after the assault on Allen, a search warrant for the house of the defendant's mother was executed. The defendant was found hiding in the attic and was arrested.

I

The defendant first claims that the trial court improperly permitted the state to cross-examine him concerning his pretrial silence and to comment on that silence during closing argument, in violation of his constitutional right to remain silent under the strictures of *Doyle* v. *Ohio,* 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). He argues that the prosecutor's breach of his constitutional rights to remain silent and to due process and the denigration of the right to counsel independently and collectively require that his convictions be set aside and a new trial ordered.[2] We disagree.

Initially, we note that the defendant failed to raise this claim at trial. While we do not generally entertain claims not raised at trial, we will review claims that meet the standard for reviewability set forth by our Supreme Court in *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973) and *State* v. *Golding,* 213 Conn. 233, 239–42, 567 A.2d 823 (1989).[3] Both the Supreme

---

[2] The defendant makes no claim that the prosecutorial comment or the cross-examination violated any provision of the state constitution and, accordingly, we choose to limit our review to the federal constitutional standards. See *State* v. *McMurray,* 217 Conn. 243, 248 n.6, 585 A.2d 677 (1991).

[3] "In *State* v. *Golding,* [213 Conn. 233, 239–40, 567 A.2d 823 (1989)], the Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial if the following four conditions are met: (1) the record is adequate to review the alleged error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental constitutional right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error

Court and this court have reviewed similar claims in the past. See *State* v. *Jones*, 215 Conn. 173, 182, 575 A.2d 216 (1990); *State* v. *Hull*, 210 Conn. 481, 486, 556 A.2d 154 (1989); *State* v. *Plourde*, 208 Conn. 455, 462, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989); *State* v. *Apostle*, 8 Conn. App. 216, 221, 512 A.2d 947 (1986). Although the record here is adequate to review the claim concerning the use of the defendant's prearrest and postarrest silence and although it is of constitutional magnitude alleging a violation of a fundamental constitutional right, we conclude that the alleged violation does not clearly exist and that the defendant was not deprived of a fair trial as to the prearrest silence. We further conclude that a harmless error analysis as to the postarrest silence reveals that the state proved its harmlessness beyond a reasonable doubt.

The defendant's complaint of a *Doyle* violation is twofold. The defendant argues that the prosecutor improperly commented on both his prearrest and postarrest silence. During cross-examination of the defendant the following colloquy occurred:

"Q. When you say you didn't do the shooting, I just want to ask you this. You didn't do the shooting—why didn't you tell [the police] that you didn't do the shooting [when you went to the police station on the night of the shooting]?

"A. I don't remember them asking me that.

"Q. Do you remember being outside the police station the night of the shooting?

analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. Id., 239–40. A defendant cannot prevail on an unpreserved constitutional claim unless all of the four conditions are met, any one of which may be considered first. *State* v. *Shaw*, 24 Conn. App. 493, 497, 589 A.2d. 880 (1991)." *State* v. *Menzies*, 26 Conn. App. 674, 694, 603 A.2d 419 (1992).

"A. Yes.

"Q. You didn't go in there at all and tell them that you didn't do the shooting?

"A. No.

"Q. And from May 25, 1988, to October 20, 1989,[4] you never told the police that you did not do the shooting; is that right?

"A. No.

"Q. And from October 29, 1989, up to the present day, you never told the police that you didn't shoot Mr. Allen?

"A. No, I don't remember."

Additionally, in closing argument the prosecutor stated: "Now it's the question of why didn't Mr. Williams tell the police. . . . Mr. Goodman stated that on the very night of the shooting, Goodman claimed to have driven Mr. Williams to the police station. . . . Why didn't Mr. Williams at that point [go into the police station]?"

"*Doyle* v. *Ohio,* [supra], proscribes the use for impeachment purposes of a defendant's silence subsequent to his arrest and after receiving *Miranda*[5] warnings. 'The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony.' " (Emphasis omitted.) *State* v. *Shashaty,* 205 Conn. 39, 48, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988), quoting *Wainwright* v. *Green-*

---

[4] We presume that the prosecutor meant October 29, 1989, the date the defendant was arrested.

[5] *Miranda* v. *Arizona,* 384 U.S. 436, 467–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*field,* 474 U.S. 284, 292, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986). *Doyle* applies only to cases involving custodial interrogation and the focus is on the period immediately following the defendant's receipt of *Miranda* warnings. *State* v. *Paulino,* 26 Conn. App. 86, 93, 598 A.2d 666 (1991), cert. granted on other grounds, 221 Conn. 907, 600 A.2d 1361 (1992); *State* v. *Henderson,* 24 Conn. App. 295, 299, 588 A.2d 224 (1991).

The defendant's reliance on *Doyle* to support his argument that comment on his prearrest silence violated his due process rights and his right to remain silent is misplaced. The defendant seeks to extend the prohibition against evidence of postarrest silence of an accused to the period prior to his arrest. The *Doyle* court based its holding that "impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process"; *State* v. *Plourde,* supra, 465; on two considerations: "First, it noted that silence in the wake of *Miranda* warnings is 'insolubly ambiguous' and consequently of little probative value. Second and more important, it observed that 'while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.' " Id., 465–66; *Greer* v. *Miller,* 483 U.S. 756, 762–63, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987); *Wainright* v. *Greenfield,* supra, 291.

Although it is "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial"; *Doyle* v. *Ohio,* supra, 618; prosecutorial comment on the defendant's prearrest silence, however, can be used for purposes of impeachment and does

not create a constitutional violation.[6] *Jenkins* v. *Anderson,* 447 U.S. 231, 235, 100 S. Ct. 2124, 65 L. Ed. 2d 2486 (1980); *State* v. *Leecan,* 198 Conn. 517, 521, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Consequently, we conclude that the state's use of the defendant's prearrest silence to impeach his credibility was not improper.

Our inquiry does not end here, however, because the prosecutorial comments and cross-examination subject to our review involve both prearrest and postarrest silence. Here, we conclude that the prosecutor's question to the defendant "[a]nd from October 29, 1989, up to the present day, you never told the police that you didn't shoot Mr. Allen" was improper because it involves postarrest silence. We must now determine "whether it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible questioning." See *State* v. *Morrill,* 197 Conn. 507, 539, 498 A.2d 76 (1985).

" 'A *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon a defendant's silence following a *Miranda* warning. Under such circumstances, the state's use of a defendant's postarrest silence does not constitute reversible error.' *State* v. *Silano,* 204 Conn. 769, 781, 529 A.2d 1283 (1987). ' "The [error] has similarly been [found to be harmless] where a prosecutor does not focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the 'jugular' of the defendant's story." ' Id.; *United States* v. *Davis,* 546

[6] A prosecutor's argument to the jury that the defendant has an obligation to inform the police of certain inaccuracies in his postarrest statement constituted an impermissible comment. *State* v. *Apostle,* 8 Conn. App. 216, 221, 512 A.2d 947 (1986).

F.2d 583, 594 (5th Cir.), cert. denied, 431 U.S. 906, 97 S. Ct. 1701, 52 L. Ed. 2d 391 (1977); *State* v. *Pellegrino,* 194 Conn. 279, 292, 480 A.2d 537 (1984); *State* v. *Zeko,* 177 Conn. 545, 555, 418 A.2d 917 (1979)." *State* v. *Hull,* supra, 492; see also *State* v. *Casey,* 201 Conn. 174, 185, 513 A.2d 1183 (1986).

The state's reference to the defendant's postarrest silence was limited. Only one question during the defendant's cross-examination addressed this issue. We cannot say that the isolated reference to the postarrest silence, when viewed in the context of the entire proceeding, denied the defendant any constitutional right attendant to a fair trial. It is clear from the record that, notwithstanding the reference to the defendant's postarrest silence, there was sufficient evidence from which the jury could reasonably have found the defendant guilty of the charged offenses beyond a reasonable doubt. "Although a finding of harmless error in a situation where the state improperly comments upon the defendant's postarrest silence is the exception to the rule, we find that the present case fits the exception rather than the rule. *State* v. *Morrill,* supra, 539." *State* v. *Boone,* 15 Conn. App. 34, 44–45, 544 A.2d 1084, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988). From our review of the record, we conclude that, absent this impermissible comment, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty.

## II

The defendant next claims that the trial court improperly admitted testimony that the defendant was found hiding in the attic of his mother's house at the time a search warrant for the premises was executed and improperly instructed the jury that such concealment was an admission by conduct that they could consider as evidence of the defendant's consciousness of guilt.

The state introduced evidence that when the search warrant for the defendant's mother's house was executed, the defendant, for whom there was an outstanding arrest warrant in connection with the assault and robbery of Allen and an outstanding arrest warrant in connection with a murder committed on August 28, 1989, was found hiding in a crawl space in the attic. Defense counsel objected to this line of questioning on grounds of relevance. His objection was overruled and his exception thereto was noted for the record. This objection and the exception to the trial court instruction on consciousness of guilt properly preserved this claim for appellate review.[7]

Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a charge on the inference of consciousness of guilt. *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989); *State* v. *Milner*, 206 Conn. 512, 519, 539 A.2d 80 (1988); *State* v. *Banks*, 194 Conn. 617, 621–22, 484 A.2d 444 (1984). Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist that tend to rebut an inference of guilt does not render evidence of concealment inadmissible but simply

---

[7] The trial court charged as follows: "Next is the subject of concealment. Whereas the accused is alleged to have been in the house when the police officers went to his mother's house to seek him out and the arrest was made that day, the law of our state recognizes a principle known as 'admission by conduct.' The conduct of a person leaving the scene or concealing himself from detection tends if unexplained, it tends if unexplained to show a consciousness of guilt on the part of that person of guilt. Concealment of the accused after the crime is committed does not create a presumption of guilt. You may consider evidence of concealment as tending to prove the defendant's consciousness of guilt. You should consider and weigh evidence of concealment by the accused in connection with all other evidence in the case and give it such weight as in your sound judgment it is fairly entitled to receive. Now be cautious on that. You consider the length and breadth of the time, and you consider his testimony on that subject as well."

constitutes a factor for the jury's consideration. *State* v. *Piskorski,* 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The probative value of evidence of concealment depends on all of the facts and circumstances and is a question of fact for the jury. *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988); *State* v. *Wright,* 198 Conn. 273, 281, 502 A.2d 911 (1986). Here, the defendant argues that the issue of concealment was not relevant because at the time of his arrest other warrants stemming from other charges had been issued for his arrest. Consequently, he argues, his concealment might well have been due to consciousness of guilt on other charges. This same challenge was presented and rejected in *State* v. *Briggs,* 17 Conn. App. 648, 656, 554 A.2d 1112, cert. denied, 211 Conn. 802, 559 A.2d 1137 (1989). In *Briggs,* the defendant was arrested at a motel one and one-half years after a convenience store robbery. The defendant argued that evidence of the time and place of his arrest should not have been admitted because its prejudicial impact outweighed any probative value. He also argued that because there were other outstanding warrants for his arrest, his concealment might have demonstrated a consciousness of guilt as to the other underlying offenses rather than this offense. The trial court, relying on the conclusion that "flight, when unexplained, tends to prove a consciousness of guilt"; *State* v. *Ferrara,* 176 Conn. 508, 516, 408 A.2d 265 (1979); admitted the evidence as relevant to the issue of flight. The same rationale applies here with respect to the defendant's concealment at the time he was arrested. Concealment, when unexplained, may tend to prove a consciousness of guilt.

A trial court has wide discretion in its rulings on relevancy. *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). One fact is relevant to another fact

whenever according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. *State* v. *McClendon,* 199 Conn. 5, 8–9, 505 A.2d 658 (1986). All that is required is that the evidence tend to support a relevant fact. *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987). Here, the circumstances of the defendant's arrest tended to show consciousness of guilt, and, therefore, the trial court properly permitted the testimony describing the defendant's arrest and properly instructed the jury on consciousness of guilt.

## III

The defendant next claims that the trial court unconstitutionally enlarged the offenses with which he was charged by instructing the jury on alternative statutory methods of committing those offenses and that such an instruction violated his federal and state rights to notice and due process of law. We disagree. The defendant was charged by long form information with having committed the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[8] and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2).[9]

As with his first claim, the defendant failed to raise this issue at trial and now seeks review under *State* v. *Evans,* supra, and *State* v. *Golding,* supra. The defendant claims that the instructions on each crime denied

---

[8] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or a third person by means of a deadly weapon or a dangerous instrument . . . ."

[9] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

him constitutional rights; first, that the instruction on assault in the first degree violated his right to be convicted only on proof beyond a reasonable doubt; *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1987); and, second, that the instruction on robbery in the first degree violated his right to be given notice of the specific charges against him and the concomitant right to defend against those charges. *Cole* v. *Arkansas,* 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 2d 644 (1948).

## A

### ASSAULT INSTRUCTION

In its information the state charged the defendant with assault in the first degree, alleging that "the said Floyd Williams with *intent to cause serious physical injury to one James Allen,* did cause serious physical injury to the said James Allen." (Emphasis added.) In its instruction to the jury, however, the court permitted the jury to find the defendant guilty of assault in the first degree if it found that "the defendant had the specific intent to cause [serious physical] injury to [James Allen] *or a third person."* (Emphasis added.) This charge reflects the language of General Statutes § 53a-59 (a) (1), which includes in the definition of assault in the first degree an intent to cause serious physical injury to another person and such an injury to that person or a third person that is actually sustained.

The defendant does not challenge the fact that the state proved the allegations of the information that the defendant intended to cause serious physical injury to Allen, but rather, that because no evidence was adduced at trial that there was an intent to assault anyone other than Allen, the trial court improperly instructed on this alternative theory of liability.

The two part test for appellate analysis of a claim of evidentiary insufficiency is well established. "First, we review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. Second, we determine whether, on the facts so construed and the inferences reasonably drawn therefrom, the jury could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." *State* v. *Jupin,* 26 Conn. App. 331, 337, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). In reaching its conclusions, the jury may draw reasonable and logical inferences from the proven facts. *State* v. *King,* 216 Conn. 585, 602, 583 A.2d 896 (1990). In determining whether the jury reasonably could have found the defendant guilty, we ask if any rational factfinder could have done so. *State* v. *Montanez,* 219 Conn. 16, 20, 592 A.2d 149 (1991).

There was ample evidence adduced at trial, through the testimony of the defendant, the victim, Goodman and Lindsay, that at the time of the assault there were a number of individuals entering and exiting the bar as well as standing in the entrance. It is reasonable for the jury to infer that the defendant was shooting at any one of those individuals. Thus, there was sufficient evidence that the intended victim of the robbery and assault might have been someone other than Allen. The trial court, therefore, properly instructed the jurors that the defendant could be convicted if they were to find that he intended to assault either Allen or a third person.

## B

### ROBBERY INSTRUCTIONS

The information also charged the defendant with robbery in the first degree and alleged that "the said Floyd Williams stole certain property from one James Allen . . . *and in the course of the commission of the crime*

*was armed with a deadly weapon."* (Emphasis added.) In its instructions to the jury, however, the court permitted the jury to find the defendant guilty if it found that "in the course of the commission of the crime or the immediate flight therefrom *he or another participant [was] armed with a deadly weapon."* (Emphasis added.) The defendant argues that the variance between the offense as charged in the pleadings and the instruction to the jury deprived him of his federal and state constitutional rights to notice; U.S. Const., amend. VI; Conn. Const., art. I, § 8; in that, in order to obtain a conviction for the crime as it was charged in the information, the state was required to prove that the defendant possessed a deadly weapon during the commission of the offense, but that the instruction to the jury permitted the state to meet its burden of proof by establishing that either the defendant or another participant possessed a deadly weapon during the commission of the offense. The defendant claims that under the specific facts of this case, this misstatement was extremely prejudicial because there was evidence that another individual, Payton, also possessed a gun at the time of the assault and that it was the defendant's theory of defense that it was another individual who shot the victim.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him 'with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . .' " *State* v. *Scognamiglio,* 202 Conn. 18, 22, 519 A.2d 607 (1987); *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986); *State* v. *Roque,* 190 Conn. 143, 154, 460 A.2d 26 (1983). Possession of a deadly weapon by the defend-

ant or possession of a deadly weapon by another participant are simply two methods of committing one offense. The defendant's conviction under either theory of liability would bar subsequent prosecution for the same offense. Thus, for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense. *State* v. *Scognamiglio,* supra; *State* v. *Roque,* supra, 156.

The defendant does not claim, nor do we find, that he was unfairly surprised by the trial court's instruction. The thrust of the defendant's claim, however, is that he was prejudiced in the preparation of his defense by such an instruction. "In determining whether a defendant has been prejudiced in the preparation of his defense, we consider the nature of his defense advanced at trial in relation to the trial court's instruction. . . . Where the record indicates that the defendant would not have changed his defense in any way had he actually been charged by the state with the particular theory of criminal liability upon which a trial court instructed the jury, the defendant's defense cannot be said to have been prejudiced. . . . Thus, if the defendant's defense encompasses the uncharged theory of criminal liability as well as the charged theory, and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the trial court's instruction." (Citations omitted.) *State* v. *Trujillo,* 12 Conn. App. 320, 326–27, 531 A.2d 142, cert. denied, 205 Conn. 812, 532 A.2d 588 (1987).

The defendant put forth the following defense through his own testimony and that of Goodman. The defendant and Goodman went to Faces Cafe on the night of the incident to look for the defendant's cousin. Goodman waited by the car while the defendant went into the bar. While the defendant was inside, Goodman

saw Payton fire a shotgun over the door of the bar. After Payton fired the first shot, Goodman saw a "bunch of young boys" fire additional shots. As the defendant was leaving the bar, he too heard shots being fired from outside. The defendant ran out of the bar and past the victim, who was falling toward him. He and Goodman got into Goodman's car and the two of them drove to the police station. The defendant remained in the car while Goodman went inside to report the incident.

The defendant claims that his defense at trial was that he was not the shooter, but, rather, that another individual, Payton, shot the victim. There was no testimony at trial that anyone other than the defendant shot the victim. The testimony regarding Payton indicated that he possessed a shotgun that evening and that he shot it only once and not at the victim, but straight up in the air. In his statement to the police, the victim indicated that Payton had a gun but that Payton was not the person who shot him. Therefore, under the circumstances of this case, we conclude that the defendant's defense encompassed both the charged and uncharged theories of liability and that because either, if believed by the jury, could have led to an acquittal, the defendant's constitutional rights were not adversely implicated by the trial court's instructions. "[T]he instructional error was [therefore] harmless because we are 'satisfied beyond a reasonable doubt that it did not contribute to the verdict.' " *State* v. *Mankus,* 16 Conn. App. 184, 191, 547 A.2d 84, cert. denied, 210 Conn. 801, 553 A.2d 616 (1988), quoting *State* v. *Coleman,* 14 Conn. App. 657, 682, 544 A.2d 194 (1988).

IV

In his final claim, the defendant presents a two part challenge to the trial court's instructions concerning circumstantial evidence. The defendant claims that the

trial court's failure to instruct the jury that only subordinate facts need be proven beyond a reasonable doubt before reasonable inferences could be drawn therefrom and that this high standard of proof did not apply to the defendant violated his federal and state constitutional rights to due process and to present a defense.[10] We disagree. The trial court instructed that "the jury must initially find that the state has proven the basic facts from which the jury has been asked to draw an inference beyond a reasonable doubt. If and only if the jury finds the basic facts to be proven beyond a reasonable doubt, may you go on to consider the inference. The inference drawn must be reasonable and logical, and not a result of speculation or conjecture."

The defendant claims that these issues have been preserved for appellate review through his request to charge,[11] or, in the alternative, he seeks review under *State* v. *Evans*, supra, and *State* v. *Golding*, supra. We disagree with the defendant's first contention because his failure to object to the instruction at trial is not cured merely by the fact that he filed a request to charge that is technically correct as to other matters. *State* v. *Silano*, 204 Conn. 769, 776, 529 A.2d 1283 (1987). We will review this final claim under *State* v. *Evans*, supra, and *State* v. *Golding*, supra, because the defendant alleges a violation of a fundamental constitutional right. *State* v. *McDonough*, 205 Conn. 352, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

---

[10] As with the first claim, because the defendant has not separately analyzed his federal and state claims, we choose to consider only his federal claim. *State* v. *McMurray*, 217 Conn. 243, 248 n.6, 585 A.2d 677 (1991); cf. *State* v. *Geisler*, 25 Conn. App. 282, 283–84 n.3, 594 A.2d 985, cert. granted on other grounds, 220 Conn. 918, 597 A.2d 342 (1991).

[11] The relevant portion of the defendant's request to charge states: "Facts which compromise essential elements of a crime, whether they are the subject of direct proof or whether they are inferred, must be proved beyond a reasonable doubt."

Where the principle factual issue at trial is intent, which is typically proven by circumstantial evidence, our appellate courts will closely scrutinize the trial court's instructions on circumstantial evidence in isolation from the remainder of the charge, to determine whether the court misled the jury. *State* v. *Robinson,* 204 Conn. 207, 210, 527 A.2d 694 (1987). The principle factual issue at trial here, however, was the identity of the victim's assailant. Unlike intent, an issue such as identity has ordinarily been proven by direct testimony with circumstantial evidence playing a subordinate role. Accordingly, our review of the defendant's claim is guided by the established rule that jury instructions are not to be subjected to microscopic examination with an eye toward discovering possible inaccuracies. *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991); *State* v. *Dyson,* 217 Conn. 498, 501, 586 A.2d 610 (1991). Rather, the entire charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *McDonough,* supra, 356; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). We consider whether it was reasonably possible that the charge as a whole misled the jury. *State* v. *Castonguay,* 218 Conn. 486, 498, 590 A.2d 901 (1991). Because the defendant's claim regarding which facts need be proven beyond a reasonable doubt is distinct from his claim regarding the proper distribution of the burden of proof, we consider these claims separately.

## A

### PROOF OF SUBORDINATE FACTS

Our review of the trial court's instructions leads us to conclude that in charging that the basic facts leading to the inferences must have been proven beyond a reasonable doubt the trial court was incorrect. Where a group of facts is relied on for proof of an element

of a crime it is the cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proven in accordance with that standard. It is only where a single fact is essential to proof of an element, however, that such evidence must support the inference of that fact beyond a reasonable doubt. *State* v. *McDonough,* supra, 355.

The trial court properly instructed the jury that the state bore the burden of proving each element essential to conviction beyond a reasonable doubt. Moreover, the charge given here did not dilute the burden of proof placed on the state but rather increased it. "The state might well have complained that such a charge imposed a far greater burden upon it than the standard requirement that only the inference of guilt as to each element of the crime, as distinguished from the totality of the subordinate facts from which the inference is to be drawn, need be proved beyond a reasonable doubt." *State* v. *James,* 211 Conn. 555, 581, 560 A.2d 426 (1989).

The primary thrust of this case was identification and the credibility of the witnesses. A review of the charge, in its entirety, leads us to conclude that there is no reasonable possibility that the jury was misled by the trial court's instructions.

## B

### DISTRIBUTION OF THE BURDEN OF PROOF

The defendant argues that the failure to instruct the jury that the defendant may rely on facts inferable from his circumstantial evidence which need not be proven beyond a reasonable doubt sets a beyond a reasonable doubt standard for drawing inferences from circumstantial evidence whether offered by the state or by the defendant, and thereby places an unconstitutional

burden on him. This same argument was presented to this court in *State* v. *Rivera,* 24 Conn. App. 670, 675, 591 A.2d 440, cert. denied, 219 Conn. 914, 593 A.2d 139 (1991), and to our Supreme Court in *State* v. *Ortiz,* supra, 666.

The trial court properly instructed the jury regarding the distribution of the burden of proof that the defendant was presumed innocent until the state proved his guilt, and that the defendant bore no burden with respect to disproving his guilt. It instructed that "the state must prove guilt beyond a reasonable doubt. The burden of proof in criminal matters is upon the state to prove beyond a reasonable doubt that this accused is guilty of the crime with which he has been charged. The defendant does not have to prove his innocence. This means that the state will have to prove every element necessary to constitute the offenses as I will explain those elements to you. . . . A man is presumed to be innocent until proven guilty. . . . So far as you are concerned this defendant is innocent of the crimes here charged, unless or until the evidence produced before you satisfies you of his guilt beyond a reasonable doubt. The accused does not have to prove that he did not commit the offenses with which he is charged. The burden of proof remains with the state that he is guilty, and that in order to do that it must prove every essential element of the offenses charged." The trial court's instructions, as a whole, properly appraised the jury as to which party bore the burden of proof. We conclude that it is not reasonably possible that the jury was misled into believing that the defendant was required to prove the basic facts beyond a reasonable doubt before inferences could be drawn therefrom.

The judgment is affirmed.

In this opinion the other judges concurred.