******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RAQUANN
TYRONE DAVIS
(AC 32084)

Alvord, Sheldon and Pellegrino, Js.

*Argued September 16—officially released December 16, 2014*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Holden, J.)

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with
whom, on the brief, were *Kevin D. Lawlor*, state's attor-
ney, and *Charles M. Stango*, supervisory assistant
state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Raquann Tyrone Davis, was convicted, following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4),[1] and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4).[2] On remand from our Supreme Court,[3] the defendant claims that the trial court improperly instructed the jury that it could find him guilty under a theory of liability not set forth in the state's long form information. Specifically, he argues that count one of the long form information, charging him with robbery in the first degree, alleged that "[the defendant] was armed with what he represented by his words or conduct to be a firearm" during the commission of the crime, but that the court instructed the jury that the defendant could be found guilty of robbery in the first degree if *any person* participating in the commission of the crime possessed a firearm. We affirm the judgment of the trial court.

This court's previous opinion sets forth the following facts that the jury reasonably could have found. "Sometime after 10 p.m. on July 12, 2008, the defendant, Thaddeus Lowery and Brian Backman were passengers in an automobile being operated by Gerard Jones. Jones drove to a deli in West Haven, spoke with two other men there and then walked toward the victim, Dayshon Caple, who was standing near a restaurant that was close by. Jones, who was acquainted with the victim, discussed obtaining marijuana from him. Following their conversation, Jones and the victim, who believed that Jones had offered him a ride home in exchange for marijuana, approached Jones' automobile. The defendant and Lowery exited the automobile. The defendant brandished a revolver that he held close to the victim's chest and Lowery brandished a shotgun that he pointed at the victim's head. The victim, perceiving that he was about to be robbed, told the men that he did not 'have anything.' The defendant cocked the hammer on his revolver and asked the victim, 'you think we playin'?' Thereafter, the defendant and Lowery searched the victim's clothing and stole his cellular telephone, a quantity of marijuana in his possession and his wallet that contained approximately $40. Jones stood nearby while these events unfolded. After the defendant, Lowery and Jones got back into their automobile with the victim's possessions and drove away, the victim fled to a nearby gas station where he called family members for assistance. Later, Jones provided information concerning these events to the police."[4] *State* v. *Davis*, 131 Conn. App. 50, 52–53, 26 A.3d 128 (2011), rev'd, 311 Conn. 468, 88 A.3d 445 (2014).

The following procedural history also is relevant to the defendant's appeal. By means of a long form information, the state alleged that the defendant committed

the crime of robbery in the first degree and the crime of conspiracy to commit robbery in the first degree. In count one of its long form information, which pertained to the charge of robbery in the first degree, the state alleged that "during the commission of the crime [the defendant] was armed with what he represented by his words or conduct to be a firearm . . . ." In count two of its long form information, which pertained to the charge of conspiracy to commit robbery in the first degree, the state alleged that "[the defendant], acting with intent that conduct constituting a crime be performed, did agree with [Lowery] and [Backman] to commit a robbery of [the victim] . . . and one of the participants committed an overt act in furtherance of the conspiracy . . . ." The long form information defines the overt act as follows: "On July 12, 2008, at approximately 11 p.m., one of the coconspirators threatened [the victim] with what he represented to be a firearm."

On January 4, 2010, the defendant filed his written requests to charge covering several different jury instructions. None of the requested charges covered the elements of robbery in the first degree. That same day, the state filed its written requests to charge. One of the state's proposed charges covered the elements of robbery in the first degree, citing § 6.4-1 of the Connecticut Criminal Jury Instructions.[5]

On January 5, 2010, the trial commenced, and the state completed the presentation of its evidence. Immediately after the state rested, the court held a charge conference with the attorneys. Prior to the delivery of the charge to the jury, the only discussion of the jury instructions with respect to the elements of robbery was limited to the state's proposed charge, which defense counsel stated he had not yet read.

The next day, January 6, 2010, counsel gave their closing arguments, and the court delivered its charge to the jury. As relevant to the claim raised on appeal, the court instructed the jury that one of the elements of the crime of robbery in the first degree, to be proven beyond a reasonable doubt by the state, was "that in the course of the commission of robbery or immediate flight therefrom, the defendant or another participant in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, shotgun or other firearm." The court further instructed that "[i]f any person participating in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, shotgun or other firearm while in immediate flight from the crime, then all the participants in the robbery would be just as guilty of first degree robbery as if they had themselves actually done so."

Defense counsel did not raise any objection with respect to the court's robbery instruction. The jury

returned a verdict of guilty on both counts of part one of the long form information; see footnote 2 of this opinion; and the trial court rendered judgment in accordance with the verdict. This appeal followed.

The defendant's sole issue on appeal is that the trial court violated his constitutional rights to due process and to notice of the charges against him by enlarging the charged offense in relation to the long form information, which alleged that the robbery was committed by the defendant with a firearm. The defendant claims that "[t]he trial court's expansion of the charge enabled the jury to convict the defendant on the theory that another participant in the robbery had a firearm, even if the jury concluded that [the defendant] did not himself have a firearm."

Because the defendant did not preserve his claim of instructional error for appellate review by objecting to the jury instructions, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] Pursuant to our Supreme Court's remand, we consider the defendant's claim and conclude that it does not satisfy the third prong of the *Golding* test because the defendant failed to demonstrate that the constitutional violation alleged in this case clearly exists and clearly deprived him of a fair trial.[7]

Due process requires that a criminal defendant be given notice of the specific charge against him and an opportunity to defend against that charge. *Cole* v. *Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948). The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise. *State* v. *Marra*, 222 Conn. 506, 527, 610 A.2d 1113 (1992). "[That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct." (Internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 222, 819 A.2d 250 (2003).

"[E]nlargement cases involve claims that the trial court expanded the state's information by instructing the jury on statutory or factual alternatives not charged in the information.[8] . . . It is incumbent upon the defendant in an enlargement case to demonstrate that the trial court's charge caused him *unfair surprise* or *prejudiced him in the preparation of his defense.* . . . In other words, the defendant must show that: (1) the challenged jury instructions improperly enlarged the charges brought against him; and (2) such enlargement was prejudicially harmful. The defendant's enlargement claims, like other claims that jury instructions violated

a constitutional right, require us to exercise plenary review as we examine the charge as a whole to determine whether it misled the jury." (Citation omitted; emphasis added; footnote added; internal quotation marks omitted.) *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646 (2011).

The following additional facts are relevant for our resolution of the defendant's claim that he was unfairly surprised and prejudiced in his defense by the court's instructions to the jury with respect to the charge of robbery in the first degree. During the trial, the testimony of the witnesses established that Jones was driving a Dodge Neon the evening of July 12, 2008, with the defendant, Lowery and Backman as his passengers. Jones parked the vehicle, got out and headed toward the deli to purchase cigars. Jones encountered the victim, and they both headed back and were approaching the Neon when two of the three passengers in the car exited with guns. The victim said that he could not identify the men with the guns, but he did testify that one male held a revolver and the other male held a shotgun. No one testified that Jones ever held a weapon at the time of the incident.

Jones testified that the defendant and Lowery were the men who robbed the victim, and that the defendant pointed a sawed-off shotgun at the victim's head and Lowery pointed a revolver at the victim's chest. Jones further testified that he was unaware that any of his passengers had firearms that evening and that he did not know of their plans to rob the victim. After the victim was robbed and ran past Jones toward the gas station, Jones testified that he, the defendant and Lowery got back into the car. According to Jones, Backman was now in the driver's seat and drove the Neon away from the crime scene.

During cross-examination, Jones testified that the defendant was wearing a pair of long shorts and a long white T-shirt on the night of the robbery. Defense counsel asked if Jones saw the defendant with the sawed-off shotgun when the defendant entered the Neon that evening, and Jones responded that he did not see the shotgun until the defendant and Lowery exited the car sometime later and robbed the victim. Defense counsel then questioned Jones extensively about his agreement with the state to testify at the defendant's trial, and Jones acknowledged that he was able to plead to a lesser offense than originally charged for his involvement in the crime and that the state had recommended a suspended sentence in return for his cooperation.

On the first day of jury selection, the defendant filed in court his response to the state's motion for disclosure of an alibi defense. The defendant gave notice that he intended to call one alibi witness, and he disclosed that individual's name and address. When the state rested, however, defense counsel stated, outside the presence

of the jury, that the defendant had elicited his evidence through the cross-examination of the state's witnesses. The defendant did not testify at trial, nor did he call any witnesses of his own.

On January 6, 2010, counsel gave their closing arguments. Defense counsel argued that Jones was not a credible witness. He told the jury that Jones "essentially is the state's case" and that he had a strong motive for testifying as he did because of his agreement with the state. Defense counsel stated: "[H]ow can you possibly do what [Jones] claims he did and not be aware that these people had guns and weapons and so forth on them. . . . I mean, you heard the clothing description. . . . The description was that they were wearing T-shirts and shorts. . . . So, you know that when he testified here yesterday, he lied. There's no question about that."

Defense counsel continued: "I would suggest that the only thing that the state has established . . . is that the robbery occurred, Caple was the victim of that robbery and Jones set him up. . . . That's what they've established. They've established nothing more. They have established no credible evidence that takes you any farther beyond that. . . . [T]here is absolutely nothing here to corroborate the testimony of Jones. Nothing." After twice referring to the "uncorroborated testimony of a convicted felon," defense counsel concluded his closing argument as follows: "I would suggest to you, you could not possibly convict [the defendant] on the basis of the evidence, on the basis of the testimony which you heard in this courtroom yesterday." The state then presented its rebuttal argument, and the court charged the jury.

Later that afternoon, the jury returned with its verdict of guilty as to both charges, and the court accepted and recorded the verdict. At approximately 3 p.m. that same afternoon, the defendant pleaded guilty to the part B information. The defendant was sentenced on March 10, 2010.

I

We first address the defendant's claim that he lacked adequate notice that he was being charged with, and could be convicted of, robbery in the first degree if the jury found that not he, but one of the participants had a firearm during the commission of the crime. The lack of adequate notice, argues the defendant, was prejudicially harmful because it caused him unfair surprise. The defendant's claim fails for several reasons.

Connecticut case law is clear that "[t]here is no meaningful distinction between principal and accessory liability; they are simply theories for proving criminal liability. . . . [A] defendant may be convicted as an accessory even though he was charged only as a principal . . . ." (Citation omitted.) *State* v. *Hamlett*, 105

Conn. App. 862, 869, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008). "Under Connecticut law, a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct." *State* v. *Smith*, 212 Conn. 593, 606, 563 A.2d 671 (1989).[9] "The defendant is incorrect . . . when he argues that his liability turns on whether he was found to be a principal or an accessory. Those labels are hollow . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 789, 772 A.2d 559 (2001).

Further, as previously noted, the state did charge in the second count of the long form information that the defendant conspired with Lowery and Backman to rob the victim, and that "one of the participants" committed an overt act in furtherance of that conspiracy. The overt act, as identified in the long form information, was that "one of the coconspirators threatened [the victim] with what he represented to be a firearm." Under these circumstances, the defendant's claim that he was unfairly surprised that he could be found guilty of robbery in the first degree if one of the other participants held the firearm is without merit. The following cases support this determination.

In *State* v. *Correa*, 241 Conn. 322, 696 A.2d 944 (1997), the defendant was charged in an eleven count information with one count each of conspiracy to commit capital felony, conspiracy to commit murder, conspiracy to commit robbery in the first degree, capital felony, possession of narcotics with intent to sell, attempt to escape in the first degree, robbery in the first degree and two counts each of murder and felony murder. He was convicted of all charges after a jury trial. Id., 324 n.1. On appeal to the Supreme Court, the defendant claimed that the trial court had denied him his rights to due process and a fair trial by giving the jury a supplemental instruction that allowed the jury to find him guilty as an accessory of one count each of capital felony and robbery in the first degree, and two counts of murder. Id., 340. The defendant argued that the state had prosecuted him only as a principal as to those crimes and that he had relied on not being charged as an accessory in preparing his defense. Id.

Our Supreme Court disagreed, concluding that it was clear from the record that the defendant was on notice that he could face liability as an accessory. "We do not read each count specified in the substitute information and bill of particulars in isolation. . . . In this case, the defendant was charged with three counts of conspiracy, each of which specified that another person, who is believed to use the street name Yo-Yo, conspired with the defendant to commit murder. Also, the two counts of felony murder alleged that the defendant and Yo-Yo committed the crime of robbery in the first degree and

that the defendant, or another participant, caused the deaths of the two victims. . . . The state's evidence . . . demonstrated that the defendant was one of two persons responsible for these robbery murders. . . . We conclude that the defendant had notice that he was subject to accessorial liability and, therefore, the trial court did not improperly give the supplemental instruction." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 344.

As in *Correa*, the defendant in the present case was charged with conspiracy. The conspiracy count identified the defendant, Lowery and Backman as coconspirators and alleged that they agreed to rob the victim. More importantly, the alleged overt act, as set forth in the long form information, was that one of the coconspirators threatened the victim with what he represented by his words or conduct to be a firearm. Accordingly, the counts of the long form information, when read together, provided notice to the defendant that the state could seek a conviction on the ground of accessorial liability.

Finally, with respect to the claim of unfair surprise due to inadequate notice, we point out that the defendant failed to object to the instruction as given by the court to the jury. His claim of unfair surprise is clearly undermined by his failure to object to the disputed instruction. See *State* v. *Franko*, 199 Conn. 481, 490–91, 508 A.2d 22 (1986); *State* v. *Trujillo*, 12 Conn. App. 320, 326, 531 A.2d 142, cert. denied, 205 Conn. 812, 532 A.2d 588 (1987).

II

Having determined that the defendant was not unfairly surprised by the court's instruction on robbery in the first degree, we next consider his claim that the enlarged instruction prejudiced him in the preparation of his defense. The defendant cites *State* v. *Peterson*, 13 Conn. App. 76, 534 A.2d 1237 (1987), in support of his argument that the court's instructions on robbery in the first degree allowed him to be convicted of a crime with which he had never been charged, thereby violating his constitutional rights.

In *Peterson*, the defendant had been convicted of the crimes of robbery in the first degree, possession of weapons in a motor vehicle and possession of a sawed-off shotgun. Id., 77. The information charged that the defendant stole property from the victim and "in the course of the commission of the crime was armed with a deadly weapon, to wit: a sawed-off shotgun." (Internal quotation marks omitted.) Id., 83. When the court instructed the jury, it read the robbery statute in its entirety, which provided that the accused could be found guilty if he or another participant in the robbery committed the crime while armed with a deadly weapon. Although the defendant conceded that he had

not been unfairly surprised by the instruction, he claimed that he had been prejudiced by it because the defense he presented was insufficient to meet a charge that he participated in a robbery in which others were armed. Id., 84. This court agreed with the defendant's claim and remanded the case for a new trial on the charge of robbery in the first degree. Id., 87.

*Peterson* is distinguishable from the facts in this case. The defendant in *Peterson* testified at trial and gave his version of the events on the night of the robbery. He testified that he, James Gilcrest, Horatio Gordon and James Rawling all had been in a car driven by Gilcrest. When the car stopped at a particular location, the defendant testified, the occupants, except for himself, left the car, and he could not see what they were doing. He further testified that he had not seen a gun that evening, that he did not know why their car was later pursued by the police, and that he ran away when their car crashed into a tree because he feared for his life.

This court concluded that the defendant in *Peterson* demonstrated that his defense had been prejudiced by the court's instruction allowing a guilty verdict if either he or another participant committed the robbery while armed. "First, the state produced no evidence that the defendant participated in the robbery in any capacity other than as the man who brandished a shotgun while [the victim] was robbed. The state's contention at all times was that the defendant, not Rawling, accompanied Gordon and Gilcrest as [the victim] was robbed. The second, related concern is that here the defendant was allegedly involved in a robbery with two other individuals. Had the jury believed the defendant's testimony in its entirety, he clearly would have been acquitted of the robbery charge in light of the court's fully adequate instruction on intent. It is well established, however, that jurors are free to believe some, all, or none of a witness' testimony. . . . Here, the jury may have believed that the defendant remained in the car, yet disbelieved that he knew nothing whatsoever about his companions' plans to commit a robbery. No relevant instructions were given on what 'participation' in a robbery consists of or on robbery by aiding and abetting . . . . It is quite possible that the jury may have concluded that his very presence in the car under these circumstances somehow constituted 'participation' in the robbery. Thus, the court's reading of the statute in its entirety created the possibility that the jury convicted the defendant without ever resolving whether the defendant or Rawling held a shotgun on [the victim] during the incident." (Citations omitted; footnote omitted.) Id., 85–86.

In the present case, the defendant never acknowledged his presence at the crime scene on the night of the robbery. In fact, his entire defense was that the testimony of Jones, who placed the defendant at the

scene with a firearm, was not credible because he was a convicted felon who had a favorable arrangement with the state if he testified at the defendant's trial. The defendant's defense, if believed, would have resulted in an acquittal on both charges. The jury, however, concluded that the defendant was a participant in the robbery and found him guilty of both charges. *Peterson* does not control this case.

We now look to applicable case law for guidance. "In determining whether a defendant has been prejudiced in the preparation of his defense, we consider the nature of his defense advanced at trial in relation to the trial court's instruction. . . . Where the record indicates that the defendant would not have changed his defense in any way had he actually been charged by the state with the particular theory of criminal liability upon which a trial court instructed the jury, the defendant's defense cannot be said to have been prejudiced. . . . Thus, if the defendant's defense encompasses the uncharged theory of criminal liability as well as the charged theory, and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the trial court's instruction." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 27 Conn. App. 669; see *State* v. *Franko*, supra, 199 Conn. 491–92.

There is nothing in the record to suggest that the defendant would have changed his defense in any way had the state included the "or another participant in the crime" theory of liability; see General Statutes § 53a-134 (a); in count one of the long form information. The defendant has not, in his briefs or at oral argument before this court, indicated how he would have tried this case differently had he been aware before trial of the contents of the court's instruction on robbery in the first degree. He is unable to point to any instance when his defense was prejudiced. The defendant's defense at trial encompassed both the charged and uncharged theories of liability and, if believed by the jury, could have resulted in an acquittal on both charges. For these reasons, the defendant's constitutional rights were not adversely implicated by the trial court's instructions.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] Following the jury's verdict, the defendant pleaded guilty under the *Alford* doctrine; see *North Carolina* v. *Alford*, 400 U.S. 25, 37–39, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); to being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) (1) (A), as charged in a part B information. The court imposed a total effective sentence of fourteen years imprisonment, followed by six years of special parole.

[3] In *State* v. *Davis*, 131 Conn. App. 50, 26 A.3d 128 (2011), rev'd, 311 Conn. 468, 88 A.3d 445 (2014), this court agreed with the state's argument that the defendant had implicitly waived his unpreserved claim of an improper jury instruction with respect to the charge of robbery in the first degree, and, accordingly, we declined to review the defendant's instructional error claim and affirmed the judgment of the trial court. The Supreme Court granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly apply the waiver doctrine set forth in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011)?" *State* v. *Davis*, 302 Conn. 943, 29 A.3d 468 (2011). The Supreme Court, on review, held that the defendant did not implicitly waive his claim under its rule set forth in *Kitchens* because he never was provided with the court's actual proposed charge, and, consequently, he did not have a meaningful opportunity to review the instructions. *State* v. *Davis*, 311 Conn. 468, 471–72, 88 A.3d 445 (2014). The Supreme Court reversed the judgment of this court and remanded the case to this court "for consideration of the defendant's claim of instructional error." Id., 484.

[4] "Contrary to the victim's testimony, Jones, who testified on behalf of the state concerning the events of July 12, 2008, testified that the defendant was the assailant who had pointed a shotgun at the victim's head during the robbery. Additionally, Jones testified that he had entered into a plea agreement with the state and that, with regard to the charges pending against him in connection with the robbery of the victim, he expected to receive consideration at the time of sentencing in exchange for his trial testimony." *State* v. *Davis*, supra, 131 Conn. App. 53 n.2.

[5] The state's request to charge included the following language: "[A] person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery or of immediate flight therefrom, he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." See Connecticut Criminal Jury Instructions (revised to May 10, 2012) § 6.4-1, available at http://www.jud.ct.gov/ji/Criminal/part6/6.4-1.htm.

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] We conclude that the record is adequate for review and that the defendant's claim is of constitutional magnitude.

[8] General Statutes § 53a-134 (a) (4) creates liability for robbery in the first degree if one robs another while displaying or threatening the use of what he represents by his words or conduct to be a firearm or if he participates in a robbery in which others are so armed. Although the statute presents two methods of committing one offense; see *State* v. *Williams*, 27 Conn. App. 654, 668–69, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992); the state alleged in its long form information that the defendant had a firearm while committing the robbery. The court's jury instructions should have been "adapted to the issues and sufficient for the guidance of the jury . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 455, 10 A.3d 942 (2011).

"We have disapproved the practice of reading an entire statute to a jury where under the pleadings or the evidence only a portion of it is applicable. . . . While the court may instruct in the exact language of the statute, it should not do so where the exact statutory language might mislead the jury . . . ." (Internal quotation marks omitted.) *State* v. *Wilson*, 71 Conn. App. 110, 116–17, 800 A.2d 653, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002).

[9] At oral argument, counsel for the defendant argued that the jury did not have to believe Jones' testimony that the defendant had a firearm, particularly given the testimony that the defendant was wearing shorts and a T-shirt. There was testimony that two firearms, a revolver and a shotgun, were used in the commission of the crime. If the jury believed that the defendant participated in the robbery but did not have a firearm, and that the other two participants, Lowery and Backman, had the firearms, the evidence presented at trial would have been sufficient to establish accesso-

rial conduct to support the defendant's conviction of robbery in the first degree. This conclusion follows from the fact that the jury found the defendant guilty of conspiracy to commit robbery in the first degree, which has not been challenged on appeal.

---