## STATE OF CONNECTICUT *v.* JOHN PETERSON
## (5295)

SPALLONE, DALY and STOUGHTON, Js.

Argued October 15—decision released December 22, 1987

*Joette Katz,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2),[1] having weapons in a motor vehicle in violation of General Statutes § 29-38, and possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a). He makes the following claims on appeal: (1) his right to due process and a fair trial as guaranteed by the due process clause of the fourteenth amendment of the United States constitution was undermined by the state's improper argument, which allegedly relied on his felony record for substantive purposes; (2) his conviction of possession of a sawed-off shotgun pursuant to General Statutes § 53a-211 (a) violated his right not to be punished twice

---

[1] "[General Statutes] § 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

for the same offense as guaranteed by the double jeopardy clause; (3) the court's instructions on robbery in the first degree effectively enlarged count one of the information, allowing him to be convicted of a crime with which he had never been charged in violation of the sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution; and (4) his conviction under General Statutes § 29-38 must be dismissed because in order to convict the defendant under that statute the defendant must possess a firearm for which no proper permit had been issued and, because one cannot obtain a permit for a sawed-off shotgun, the defendant was convicted for failure to obtain that which it is impossible to obtain. We have considered the defendant's first, second, and fourth claims and find them to be without merit. With respect to the third claim, we find error.

The jury could reasonably have found the following facts. On August 6, 1985, at approximately 9:45 p.m., Kathleen Hiro loaned her Thunderbird automobile to James Gilcrest, Aron Tucker, and Anthony Tucker to go to a McDonald's. While in Hiro's Thunderbird, Gilcrest solicited the Tuckers about "pulling a robbery." Both brothers refused. Gilcrest then drove to his house, went inside, and returned carrying a blue gym bag. After dropping Anthony Tucker off at a newsstand, Aron Tucker and Gilcrest drove around looking for the defendant, finding him at a pool hall. Aron Tucker left the car and saw the defendant, Gilcrest, and two others, Horatio Gordon and James Rawling get into the Thunderbird and drive off. Aron Tucker was told to wait and the others would return to give him some money.

The men drove to Andover Street where Gilcrest stopped the car. Gilcrest got out of the car and walked across the street to where the victim, Derrick Taylor,

stood outside his house. Gordon and the defendant followed, the defendant carrying the gym bag with him.

Taylor testified that he was standing outside of his home at 168 Andover Street when a car he identified as Hiro's pulled up with four black men in it. Gordon, Gilcrest and an unidentified black man approached him. Gilcrest and Gordon each carried handguns and the third man had a sawed-off shotgun. Gordon and Gilcrest proceeded to take the victim's wallet and some cash. Rawling testified that when the three returned to the car, Gordon carried a black gun, Gilcrest carried a small silver gun, and the defendant carried a sawed-off shotgun. Rawling further testified that the three had some money and four bags of marihuana. The four drove off and a short time later saw a policeman in a cruiser who gave chase. The officer had heard a dispatch concerning a robbery committed by four armed black males in a light-colored Ford Thunderbird, Connecticut Registration 4F-8142. The Thunderbird accelerated upon being pursued by the officer. After being pursued at high speed for about one and one-half miles, the Thunderbird crashed into a tree. As the officer got out of the car, he observed gunfire coming from the Thunderbird and returned fire.

Rawling testified that, after crashing into the tree, all four men got out of the car, Gilcrest and the defendant leaving their guns in the car. Gordon still had his gun and fired four shots at the officer. The four men fled in various directions. Rawling took a cab home that night.

At about midnight, Joseph Kirkland saw the defendant and Gilcrest walking along Chopsy Hill Road. The defendant offered Kirkland money for a ride downtown. Kirkland agreed to give the men a ride to Beardsly Terrace. As he drove, Kirkland noted an unusual number of police cars in the area. The men said

that they had unknowingly been in a stolen car and were being pursued by police. At about 1:30 a.m. that morning, Aron Tucker saw the defendant and Gilcrest. Gilcrest told Tucker that he had left the keys in the Thunderbird while he went into a store and the car had been stolen. Earlier, however, Tucker had spoken to Gordon, who told him they had committed a robbery and that Gilcrest and Gordon were being chased by the police.

The officer did not get a good look at the four people who fled the car, but testified that they appeared to be black. A sawed-off shotgun, found to be in working order, and a small chrome-plated automatic handgun were found in the rear seat of the Thunderbird. An automatic Walther PPKS pistol was seized from Gordon's apartment.

The defendant took the stand and testified that he, Gilcrest, Gordon and Rawling had all been in a car being driven by Gilcrest. When the car stopped at Andover Street, all, save for himself, left the car. He testified that he could not see what the three were doing and had never seen a gun of any sort that evening. He did not know why the car was pursued by the police. He ran away after the crash because he did not know who was firing at them and feared for his life. He also denied ever speaking with Kirkland that evening.

I

In his first claim, the defendant attacks remarks concerning his criminal record made by the assistant state's attorney during his closing argument. The defendant had attacked the credibility of Rawling, a key state's witness, suggesting that he had manufactured his testimony to exculpate himself because he was on probation. The assistant state's attorney's remarks[2]

---

[2] The transcript provides: "The testimony that he didn't know what was going to happen, simply is unbelievable. It's not worthy of belief. You know,

were made in response to this attack. There was no objection at the time and there was nothing abusive about the remarks. The assistant state's attorney simply pointed out that while Rawling had a record,[3] so did the defendant, and he suggested that this was a factor which might be considered in weighing the defendant's credibility.

The defendant contends that the record adequately supports a claim that he has been deprived of a fundamental constitutional right and a fair trial, and that his case presents an "exceptional circumstance" under which an appellate court will consider a claim that has not been considered in the trial court. *State* v. *Evans*, 165 Conn. 61, 69–70, 327 A.2d 576 (1973). We disagree.

The remarks were not such as to support a claim that the defendant had clearly been deprived of a fundamental constitutional right and a fair trial, and, by his failure to object, the defendant has waived his right to a review of this claim. *State* v. *Chace*, 199 Conn. 102, 107, 505 A.2d 712 (1986); see also *State* v. *Tyler-Barcomb*, 197 Conn. 666, 674, 500 A.2d 1324 (1985).

you heard alot about Mr. Rawling's record. There is no question, he has got a record. Unfortunately nice people don't hang around with other people who commit crimes, it's a fact of life. But, you got a situation here where Mr. Peterson is not exactly a pillar of the community. He has got four felony convictions within the last five years. He has been five years in jail on each of these convictions. He has done his time. Sure, he is not on probation. The Court didn't see him fit to give him probation. He had to do his time in jail. He has had his bite of the apple and now it is time to start doing time. In the last conviction he got was a burglary conviction. So, he is no stranger to the court system either. And, he got released in July 12th of 1985 and a couple of weeks after, we have this situation. And, that is the type of person that Mr. Dunn says is credible, someone who has got— committed four felonies within the last five years, gets out of jail and within two or three weeks, finds himself in this situation. That is the type of person you should believe."

[3] Similar charges were also pending against Rawling for the same incident.

82

## II

The defendant claims that his rights under the double jeopardy clause of the United States constitution, as applied to the states through the fourteenth amendment, and the common law rule against double jeopardy were violated. His claim is that possession of a sawed-off shotgun is a lesser included offense in robbery in the first degree as charged and in the offense of having weapons in a motor vehicle as charged. "It is established that double jeopardy attaches in situations where multiple punishments are imposed for the same offense in a single trial. . . . 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' . . . Here the state concedes that the same act or transaction underlay both of the statutory offenses charged. The analysis then becomes one of deciding whether, restricting our examination to the statutes, the information and the bill of particulars . . . the proof of a violation of one statute necessarily requires proof of a violation of the other." (Citations omitted.) *State* v. *McCall,* 187 Conn. 73, 89–90, 444 A.2d 896 (1982); see *Blockberger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense without having first committed the lesser." *State* v. *Brown,* 163 Conn. 52, 61–62, 301 A.2d 547 (1972).

Each of the offenses charged requires proof of some fact which neither of the others require. To prove robbery in the first degree, proof of a larceny by force is required. To prove the charge of weapons in a motor

vehicle, it was necessary to prove that the defendant knowingly had in a motor vehicle occupied by him a weapon without a legal permit therefor. To prove possession of a sawed-off shotgun, the state was required to prove that the defendant owned, controlled or possessed a shotgun the barrel of which was less than eighteen inches in length. There is no merit to this claim.

## III

The defendant's third claim is that the trial court, in reading General Statutes § 53a-134 (a) (2) in its entirety during its instructions, allowed the jury to convict him on a theory of liability under that statute which was not alleged in the information and against which he did not put forth a defense. The defendant acknowledges that he took no exception to the court's instruction, but maintains that his claim is reviewable under *State* v. *Evans,* supra. We, therefore, must determine if, on the record, the defendant was deprived of a fundamental constitutional right and a fair trial. *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891 (1987).

The information by which the defendant was charged alleged that he stole certain property from Derrick Taylor and "in the course of the commission of the crime was armed with a deadly weapon, to wit: a sawed-off shotgun." General Statutes § 53a-134 (a) (2) provides that a person is guilty of robbery in the first degree if he *or another participant* in a robbery commits the crime while armed with a deadly weapon. The record indicates that the trial court read § 53a-134 (a) (2) in its entirety during its instruction on robbery. Thus, the defendant contends, he was deprived of notice of the crime with which he was charged, in violation of the sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut Constitution guarantee a criminal defendant the right to be informed of the charge against him 'with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . . *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979); *State* v. *Rogue,* 190 Conn. 143, 154, 460 A.2d 26 (1983)." *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986).

It is clear that General Statutes § 53a-134 (a) (2) creates liability for first degree robbery if one robs another while armed or participates in a robbery in which others are armed. See *State* v. *Secore,* 194 Conn. 692, 698, 485 A.2d 1280 (1984). To prevail, however, the defendant must demonstrate that the court's instruction resulted in unfair surprise or somehow prejudiced the preparation of his defense. *State* v. *Franko,* supra. The defendant concedes that the instruction did not cause him unfair surprise,[4] but maintains that it prejudiced him in that the defense he set forth was insufficient to meet a charge that he participated in a robbery in which others were armed. We agree.

The present situation is ostensibly similar to two recent cases decided by our Supreme Court. In *State* v. *Franko,* supra, the defendant was accused of sexual assault in the first degree. The jury was instructed that it could convict the defendant if it found that he had compelled the victim to engage in sexual intercourse either by the use of force or by threat of the use of force. The state, in its information, had alleged

---

[4] There was an extended colloquy among the prosecutor, defense counsel and the court during testimony by a ballistics expert from the state police concerning the defendant's liability under the theory of Gordon or Gilcrest being armed. No evidence was presented, however, which would have allowed the jury to consider the defendant's liability under that theory.

only that he violated General Statutes § 53a-70 (a) by *use of force*. The court held that there was no reversible error since there was sufficient evidence to convict the defendant under both theories and, if the jury had believed his defense of consent on the victim's part, he would have been acquitted under either theory. Since the defendant suffered no prejudice, the conviction could stand. Similarly, in *State* v. *Scognamiglio*, 202 Conn. 18, 519 A.2d 607 (1987), the defendant was accused of felony murder, and the trial court, reading the applicable statute in its entirety, instructed the jury that it could convict the defendant if it found he caused the death of the victim during a robbery or *flight therefrom*. The state, in its information, alleged that the death occurred *during the course of the robbery*. Again, the court found no reversible error, because there was sufficient evidence presented to convict the defendant under both theories and his defense, that another person with him had killed the victim, would have been adequate under either theory. Id., 23.

The case before us is readily distinguishable in two important respects. First, the state produced no evidence that the defendant participated in the robbery in any capacity other than as the man who brandished a shotgun while Taylor was robbed. The state's contention at all times was that the defendant, not Rawling, accompanied Gordon and Gilcrest as Taylor was robbed. The second, related concern is that here the defendant was allegedly involved in a robbery with two other individuals. Had the jury believed the defendant's testimony in its entirety, he clearly would have been acquitted of the robbery charge in light of the court's fully adequate instruction on intent. It is well established, however, that jurors are free to believe some, all, or none of a witness' testimony. See, e.g., *Fritz* v. *Madow*, 179 Conn. 269, 275, 426 A.2d 268 (1979). Here, the jury may have believed that the defendant

remained in the car, yet disbelieved that he knew nothing whatsoever about his companions' plans to commit a robbery. No relevant instructions were given on what "participation" in a robbery consists of or on robbery by aiding and abetting pursuant to General Statutes §§ 53a-8 and 53a-134 (a) (2). It is quite possible that the jury may have concluded that his very presence in the car under these circumstances somehow constituted "participation" in the robbery.[5] Thus, the court's reading of the statute in its entirety created the possibility that the jury convicted the defendant without ever resolving whether the defendant or Rawling held a shotgun on Taylor during the incident. The question in such situations is whether there was a reasonable possibility that the jury was misled. *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985); *State* v. *Grant,* 6 Conn. App. 24, 27, 502 A.2d 945 (1986). On these facts, we find there was such a possibility. In light of the testimony and the instructions, the jury could have concluded that the defendant possessed a sawed-off shotgun that night, sufficient to convict him under both General Statutes §§ 29-38 and 53a-211 (a), yet did not hold a shotgun as the victim was robbed. There is error.

## IV

The defendant finally claims that he should not have been convicted of the crime of weapons in a motor vehicle because the crime, as charged, does not exist. He claims that because there was testimony that a sawed-off shotgun may not be purchased legally, and that under General Statutes § 53a-211 no sawed-off shotgun may be possessed except under federal or state

[5] The transcript provides:

"The Court: Gentlemen, I have two questions from the jury. The first reads 'If Peterson was in the car and did not know what was going on, i.e., robbery about to take place, is Peterson guilty of robbery in the first degree?' "

license, it is not possible to obtain a permit for such a weapon. He argues, therefore, that General Statutes § 29-38 applies only to a weapon for which a permit may be issued. We do not read into § 29-38 any requirement that the weapon must be one for which a permit may be issued. The clear intent of the legislation is to make it a crime to have a weapon in a motor vehicle, although one who has a permit to do so is permitted to carry the weapon with him.

The defendant also claims that because a sawed-off shotgun is not one of several firearms listed in § 29-38, it is not included in the phrase "any other dangerous or deadly weapon or instrument." The shotgun had been tested by the police and found to be operable. It was beyond any question a dangerous or deadly weapon or instrument. See *State* v. *Cari,* 163 Conn. 174, 183, 303 A.2d 7 (1972). There is no error as to this claim.

There is error as to the first count charging robbery in the first degree only, as to that count the judgment is set aside and the case remanded for a new trial.

In this opinion the other judges concurred.