STATE OF CONNECTICUT *v.* RAQUANN
TYRONE DAVIS
(AC 32084)

Alvord, Espinosa and Pellegrino, Js.

Argued April 20—officially released August 30, 2011

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, deputy assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Charles M. Stango*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Raquann Tyrone Davis, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4).[1] The defendant claims that the court improperly instructed the jury with regard to the crime of robbery in the first degree. We conclude that the defendant implicitly waived this unpreserved claim and we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Sometime after 10 p.m. on July 12, 2008, the defendant, Thaddeus Lowery and Brian Backman were passengers in an automobile being operated by Gerard Jones. Jones drove to a deli in West Haven, spoke with two other men there and then walked toward the victim, Dayshon Caple, who was standing near a restaurant that was close by. Jones, who was acquainted with the victim, discussed obtaining marijuana from him. Following their conversation, Jones and the victim, who believed that Jones had offered him a ride home in exchange for marijuana, approached Jones' automobile. The defendant and Lowery exited the automobile. The defendant brandished a revolver that he held close to the victim's chest and Lowery brandished a shotgun that he pointed at the victim's head. The victim, perceiving that he was about to be robbed, told the men that he did not "have anything." The defendant cocked the hammer on his revolver and asked the victim, "you

---

[1] Following the jury's verdict, the defendant pleaded guilty under the *Alford* doctrine; see *North Carolina* v. *Alford,* 400 U.S. 25, 37–39, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); to being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) (1) (A), as charged in a part B information. The court imposed a total effective sentence of fourteen years imprisonment, followed by six years of special parole.

think we playin'?" Thereafter, the defendant and Lowery searched the victim's clothing and stole his cellular telephone, a quantity of marijuana in his possession and his wallet that contained approximately $40. Jones stood nearby while these events unfolded. After the defendant, Lowery and Jones got back into their automobile with the victim's possessions and drove away, the victim fled to a nearby gas station where he called family members for assistance. Later, Jones provided information concerning these events to the police.[2]

The defendant claims that the court, in its instructions concerning robbery in the first degree, improperly instructed the jury that it could find the defendant guilty on the basis of a theory of liability that was not set forth in the state's information. Specifically, the defendant argues that the court instructed the jury that he could be found guilty of the crime if it found that the other elements of the crime had been proven and that any person participating in the commission of the crime possessed a firearm. The defendant relies on the fact that the state, in count one of its long form information, alleged that "during the commission of the crime [the defendant] was armed with what he represented by his words or conduct to be a firearm . . . ." The defendant acknowledges that he did not preserve this claim for appellate review and seeks review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all*

[2] Contrary to the victim's testimony, Jones, who testified on behalf of the state concerning the events of July 12, 2008, testified that the defendant was the assailant who had pointed a shotgun at the victim's head during the robbery. Additionally, Jones testified that he had entered into a plea agreement with the state and that, with regard to the charges pending against him in connection with the robbery of the victim, he expected to receive consideration at the time of sentencing in exchange for his trial testimony.

of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. *Golding*'s first two prongs focus on the reviewability of the claim while the third and fourth prongs focus on the merits of the claim, namely, whether the defendant is entitled to a new trial. See, e.g., *State* v. *Michael A.*, 297 Conn. 808, 817, 1 A.3d 46 (2010).

There does not appear to be any dispute that the record, which contains the full transcript of the relevant trial court proceedings, is adequate to review the present claim. Nor is there any dispute that the claim is of constitutional magnitude, as the defendant claims that the court, by virtue of its instruction to the jury concerning robbery, violated his right to fair notice of the charges against him as afforded by article first, § 8, of the Connecticut constitution and the sixth amendment to the United States constitution. The state urges us to conclude that the defendant cannot prevail under *Golding* because he implicitly waived any claim related to the instructional language underlying his claim. "A defendant in a criminal prosecution may waive one or more of his fundamental rights. . . . In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007). "The rationale for declining to review jury instruction claims when the instructional error was induced or the claim was implicitly waived

is precisely the same: [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to . . . ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 470, 10 A.3d 942 (2011).

In *Kitchens*, our Supreme Court reexamined and clarified Connecticut law concerning the doctrine of implied waiver in the context of jury instruction claims. Id., 473–85. The court explained that implicitly waived claims fall into three broad categories. Id., 475. The first category includes "cases in which courts have found that the defense expressly acknowledged and agreed by words or conduct to the instruction challenged on appeal." Id. The second category includes cases in which "there was no on-the-record discussion of the challenged jury instruction but the defense acquiesced in, or failed to object to, the instruction as given, and engaged in other trial conduct consistent with the acceptance of the instruction." Id., 477. Finally, the third category includes cases in which "the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them." Id., 480.

The claim at issue in *Kitchens* fell into this third category of implicit waiver claims. With regard to such claims, the Supreme Court explained: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record

and the particular facts and circumstances of each case." Id., 482–83. Ultimately, the court in *Kitchens* reviewed the unique facts surrounding the instructional language challenged on appeal and concluded that the defendant had implicitly waived his right to raise the instructional issue. Id., 498–500.

Having set forth the relevant legal principles, we turn to the unique circumstances surrounding the instructional language at issue in the present case. Our careful review of the record reflects that, by means of a long form information, the state alleged that the defendant committed the crime of robbery in the first degree and the crime of conspiracy to commit robbery in the first degree. On January 4, 2010, the defendant filed six written requests to charge covering different instructions. Although one of these requests to charge bore the title "Defendant's Request to Charge: Robbery First Degree," neither this request nor any other submitted by the defendant covered the elements of robbery in the first degree.[3] On January 4, 2010, the state filed a written request to charge that, among other topics, covered the elements of robbery in the first degree. Following the portion of the request to charge that covered the elements of robbery in the first degree,[4] the state cited to "Section 6.4-1 Connecticut Selected Jury Instructions."

---

[3] This request to charge filed by the defendant covered the manner in which the jury must evaluate the credibility of the witnesses.

[4] As relevant to the claim raised on appeal, the state's request to charge included the following language: "[A] person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery or of immediate flight therefrom, he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."

Also, the request to charge stated in relevant part: "The second element is that in the course of the commission of the robbery or immediate flight from the crime, the defendant or another participant in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . .

"If any person who participated in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm while in immediate flight from

On January 5, 2010, immediately after the state rested, the court held a charge conference with the attorneys in this case. The following is an excerpt from the colloquy that took place during the conference:

"The Court: I have received the robbery charge [filed by the state], which is the standard charge. I intend to give the robbery [charge] in essence, maybe not exactly, but the robbery charge will be given. The usual charges, the function of the court and the jury, proof beyond a reasonable doubt, burden of proof, circumstantial and direct evidence, they will be given. I've the request for conspiracy. Counsel . . . that's your charge, conspiracy? Yes?

"[The Prosecutor]: Use the state's conspiracy charge, Your Honor?

"The Court: Yes.

"[The Prosecutor]: Yes.

"The Court: Counsel, any objection to the conspiracy charge as presented by —

"[Defense Counsel]: Your Honor, I have not seen a charge submitted by the state. I . . . could have left it in my office, but I haven't had time to review it. Is it the standard charge? It's robbery?

"[The Prosecutor]: Throughout the computer. I'm not very fair.[5]

"The Court: Right off the cyberspace.

"[Defense Counsel]: Based upon [the prosecutor's] representation, Your Honor, there's no objection.

---

the crime, then all participants in the robbery would be just as guilty of first degree robbery as if they had themselves actually done so."

[5] Because the record does not reflect that the defendant's attorney voiced any concerns related to the statement, "I'm not very fair," the statement does not affect our waiver analysis.

"The Court: It's conspiracy. You've offered, while we're on the subject, accomplice testimony. You wish to be heard?

"[Defense Counsel]: No, Your Honor. I believe that's the standard charge.

"[The Prosecutor]: I have nothing to add to that, Your Honor.

"The Court: Any objection to the court giving that charge?

"[The Prosecutor]: No, I think that's [the] status of the law, Your Honor.

"The Court: All right. Any other request that has been offered that I am not discussing? I think that's about robbery. Defendant's request for prior convictions or misconduct of witnesses. I intend to give them that charge. May come in tomorrow regarding credibility. That's one. Accomplice testimony, the motion in limine, we'll reserve that. Is that correct, counsel, regarding [the defendant]?

"[The Prosecutor]: Yes, Your Honor. Yes.

"The Court: Defendant's request to charge, option not to testify. We'll reserve that. I have [the defendant's requested] robbery [instruction] which also includes [an instruction concerning] the credibility of witnesses, which I intend to give . . . and maybe add more. Request to charge, testimony of police. That's given. We have no expert testimony here and, so, I need to adopt the larceny charge and then we are completed. Anything else that I'm missing?"

Thereafter, the defendant's attorney made an oral motion for a judgment of acquittal. After hearing argument concerning the motion, the court denied it. Following its ruling, the court asked counsel, "anything

else?" The state replied in the negative and the defendant's counsel did not raise any additional matters for consideration.

The next day, January 6, 2010, the court addressed counsel, noting that it had received a written motion for a judgment of acquittal from the defendant. After stating that the motion was denied, the court stated, "[a]nything else before the jury comes out?" The defendant's attorney replied, "[n]o, Your Honor." Following closing arguments, the court delivered its charge to the jury. After it instructed the jury as to the elements of the offenses at issue,[6] the court excused the jury for a recess. The court, addressing counsel, stated: "[T]hat completes the substantive charge. Any comments? Anything I need to correct now? Think about it." Following the morning recess, the court asked counsel: "Anything I need to add or detract?" The defendant's attorney replied, "I have nothing, Your Honor." After the court delivered the remainder of its charge, the defendant's attorney did not raise any objection related to the court's robbery instruction.

The defendant acknowledges that, at trial, the prosecutor represented that his request to charge incorporated language from the criminal jury instructions found on the judicial branch website. The defendant does not assert that his trial counsel was not provided with a copy of the state's written request to charge. Further,

---

[6] As relevant to the claim raised on appeal, the court instructed the jury in relevant part that one of the elements of the crime, to be proven beyond a reasonable doubt by the state, was "that in the course of the commission of robbery or immediate flight therefrom, the defendant or another participant in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, shotgun or other firearm. . . .

"If any person participating in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, shotgun or other firearm while in immediate flight from the crime, then all the participants in the robbery would be just as guilty of first degree robbery as if they had themselves actually done so."

the defendant acknowledges that his trial attorney represented to the court that there was no objection to such requested robbery instruction. There is no dispute that the state's request to charge for robbery in the first degree in violation of § 53a-134 (a) (4) mirrored the standard criminal jury instruction in all material respects. There is no dispute, and we conclude, that for purposes of the present claim, the court's robbery instruction was identical to that requested by the state. In arguing that he, nonetheless, did not waive the present claim, the defendant asserts: (1) after the court referred to the state's requested robbery instruction, it stated that it might not deliver the exact same instruction to the jury; (2) the court did not provide counsel with a written copy of its proposed jury instructions, and the first time that the defendant heard the robbery instruction was when the court delivered its charge to the jury; (3) the court did not bring to the attention of counsel the fact that it intended to expand upon the theory of criminal liability set forth in the information; (4) after the court delivered the instruction at issue, the defendant's attorney merely stated that he had "nothing" to bring to the court's attention and did not expressly agree with the robbery instruction; and (5) "[a]fter the trial court gave the oral instruction, there was no personal colloquy with the defendant." We are not persuaded by these arguments.

As a preliminary matter, the fact that the court, in discussing the state's requested robbery instruction, stated that it might not use the state's exact language is of no consequence to our analysis. Plainly, the court stated that it intended to deliver "in essence" the state's requested robbery instruction. Afforded its reasonable interpretation, this statement conveyed that the court intended to deliver an instruction that mirrored the state's instruction in all material respects. As discussed previously, this, in fact, occurred.

The defendant asserts that the court did not provide counsel with a copy of its proposed jury instructions, but that the defendant heard the robbery instruction for the first time when the court delivered its charge to the jury. Although the defendant is correct in that the court did not physically deliver to counsel written copies of its proposed charge, this fact does not lead us to conclude that the rationale of *Kitchens* is inapplicable to the facts at hand. In describing the class of implicitly waived claims in which defense counsel acquiesced in a challenged instruction following one or more opportunities to review such instruction, the Supreme Court in *Kitchens* referred to scenarios in which a trial court has "provid[ed] counsel with a copy of the proposed jury instructions" and has "allow[ed] a meaningful opportunity for their review." *State* v. *Kitchens*, supra, 299 Conn. 482–83. The court in *Kitchens* did not describe any particular method by which the court, in such a scenario, must provide its proposed instructions to counsel. The court's analysis strongly suggests that, for there to be an implied waiver, the court must provide such instructions in a written form rather than orally. Id., 485 (highlighting "opportunity to review the charge in writing").

Although a trial court is not required to provide the parties with a copy of its proposed jury instructions, it may do so effectively by distributing a written document setting forth such instructions. Nonetheless, based upon our careful review of *Kitchens*, we do not conclude that the distribution of a written document containing its proposed jury charge is the only means by which a court may provide counsel with its proposed charge such that counsel may conduct a meaningful review of the charge. As the courts, attorneys and parties adapt to an increasingly paperless court system, we expect that trial courts will utilize methods of conveying

proposed instructions which take advantage of techno-
logical advances and deemphasize the written page. In
our view, the dispositive factor is whether the court
has provided counsel with an opportunity to conduct
a meaningful review of its proposed charge so that "the
defendant may be deemed to have knowledge of any
potential flaws therein . . . ." Id., 483. An opportunity
for review necessarily entails that the court convey the
substance of its charge in such a manner that the parties
may review proposed instructional language, but we do
not interpret *Kitchens* to require that the court provide
such opportunity by any particular means.

Here, at the charge conference, the prosecutor and
the court referred to the robbery instruction set forth
in the state's written request to charge. The prosecutor
represented that his proposed instructions concerning
the offenses were the same as those posted on the
judicial branch website, a fact that the court confirmed.
The court stated that, in terms of substance, it intended
to deliver that instruction. Immediately after hearing
these representations, the defendant's counsel
informed the court that the defendant did not object
to the requested instruction. Although he indicated that
he had yet to review the state's written request to
charge, the defendant's counsel did not state that he
was unfamiliar with the requested instruction or that
he was unable to review such instruction. Rather, at a
juncture in the proceedings when the content of the
court's instruction was under consideration, the defen-
dant's attorney gave every indication that he was famil-
iar with the instruction at issue and that he did not
object to its inclusion in the charge. The court did not
deliver its instruction until the next day of trial. At this
later time, the defendant's attorney did not inform the
court that he was unable to locate or to review the
proposed instruction referred to the prior day. Under
these circumstances, we conclude that by referring to

the robbery instruction set forth in the state's written request to charge—which was materially similar to that posted on the judicial branch website—the court provided the defendant with its proposed jury instruction such that the defendant had a meaningful opportunity to review it well in advance of the court delivering the charge.

The defendant argues that the court did not otherwise bring to the attention of counsel the fact that it intended to expand upon the theory of criminal liability set forth in the information. This argument is not persuasive because, by stating that it intended to instruct the jury in accordance with the robbery instruction set forth in the state's request to charge, it adequately apprised counsel of the principles of criminal liability that it intended to, and did, convey to the jury.

Further, the defendant argues that he did not waive the claim because, after the court delivered the instruction at issue, his attorney merely stated that he did not have anything to bring to the court's attention, but did not expressly agree with the robbery instruction. By this argument, the defendant appears to suggest that because he did not request or otherwise expressly refer to and expressly approve the specific instructional language at issue, he did not implicitly waive any objection to it. The court in *Kitchens*, however, rejected this legal proposition, reasoning that the grounds upon which a court may find implied waiver may be greater than those required for a finding of induced error. Id., 469–70. Here, after the court afforded counsel a meaningful opportunity to review the substance of its robbery instruction and after the court delivered its charge to the jury, the defendant's attorney affirmatively stated that he did not have any objection to the charge. Under these circumstances, the conduct of the defendant's attorney constituted an implicit waiver of any objection to the instructional language challenged on appeal.

Finally, in arguing that he did not implicitly waive the present claim, the defendant relies on the fact that "[a]fter the trial court gave the oral instruction, there was no personal colloquy with the defendant." In this regard, the defendant suggests that this court should not conclude that the defendant implicitly waived the claim because the trial court directed its inquiries concerning the content of the charge to the defendant's attorney, rather than to the defendant personally. This argument is not persuasive either. In *Kitchens*, our Supreme Court stated that issues concerning the content of jury instructions are among the matters of trial management entrusted to a defendant's attorney and that "among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions." *State* v. *Kitchens*, supra, 299 Conn. 467. The court did not have a duty to engage the defendant in a dialogue concerning the content of its charge, but properly addressed such matters to the defendant's attorney. Furthermore, in crafting its charge, the court properly relied on the representations and conduct of the defendant's counsel. "Absent some indication to the contrary, a court is entitled to rely on counsel's representations on behalf of his or her client." *State* v. *Stewart*, 64 Conn. App. 340, 349–50, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

Having conducted a careful review of the circumstances in the present case, we conclude that the defendant waived the present claim related to the court's robbery instruction. By stating that it would deliver, in substance, the robbery instruction requested by the state—an instruction that the state and court represented was taken from the judicial branch website—the court afforded the defendant an opportunity to review its proposed robbery instruction. Moreover, the court afforded the defendant a *meaningful* opportunity for review in that the court did not deliver its charge

until the following day. At the time of the charging conference, the defendant's attorney indicated that he did not object to the instructions filed by the state. Following inquiries by the court related to the legal sufficiency of the charge, the defendant's attorney did not take exception to the charge delivered to the jury. Under these circumstances, we conclude that the defendant acquiesced in the instruction given and, thus, implicitly waived the present claim. Accordingly, the defendant cannot prevail under *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.