******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONECTICUT *v.* RAQUANN
TYRONE DAVIS
(SC 18864)

Rogers, C. J., and Palmer, Zarella, Eveleigh and McDonald, Js.

*Argued March 15, 2013—officially released April 22, 2014*

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Charles M. Stango*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. This appeal requires us to further define the contours of the implied waiver doctrine announced in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). The defendant, Raquann Tyrone Davis, claims that the trial court improperly instructed the jury that it could find him guilty under a theory of liability not set forth in the state's information. Specifically, the defendant argues that although the state alleged, in count one of its long form information charging him with robbery in the first degree, that "during the commission of the crime [the defendant] was armed with what he represented by his words or conduct to be a firearm," in violation of General Statutes § 53a-134 (a) (4), the court instructed the jury that the defendant could be found guilty if all the other elements of robbery in the first degree had been proven, and *any person* participating in the commission of the crime possessed a firearm.[1] Because the defendant did not preserve his claim for appellate review by objecting to the jury instructions, he sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] The Appellate Court concluded that the defendant had implicitly waived any objection to the jury instructions, and declined to review the defendant's instructional error claim on appeal. *State* v. *Davis*, 131 Conn. App. 50, 64–65, 26 A.3d 128 (2011). We granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly apply the waiver doctrine set forth in *State* v. *Kitchens*, [supra, 447]?" *State* v. *Davis*, 302 Conn. 943, 29 A.3d 468 (2011).

We conclude that, under the facts of the present case, the defendant did not implicitly waive his claim under the rule set forth in *Kitchens*, because he was never provided with the court's actual proposed charge, and consequently did not have a meaningful opportunity to review the instructions. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following facts that the jury reasonably could have found. "Sometime after 10 p.m. on July 12, 2008, the defendant, Thaddeus Lowery and Brian Backman were passengers in an automobile being operated by Gerard Jones. Jones drove to a deli in West Haven, spoke with two other men there and then walked toward the victim, Dayshon Caple, who was standing near a restaurant that was close by. Jones, who was acquainted with the victim, discussed obtaining marijuana from him. Following their conversation, Jones and the victim, who believed that Jones had offered him a ride home in exchange for marijuana, approached Jones' automobile. The defendant and Lowery exited the automobile. The defendant brandished a revolver that he held close to the victim's chest and Lowery brandished a shotgun that he pointed at the victim's head. The victim, perceiv-

ing that he was about to be robbed, told the men that he did not 'have anything.' The defendant cocked the hammer on his revolver and asked the victim, 'you think we playin'?' Thereafter, the defendant and Lowery searched the victim's clothing and stole his cellular telephone, a quantity of marijuana in his possession and his wallet that contained approximately $40. Jones stood nearby while these events unfolded. After the defendant, Lowery and Jones got back into their automobile with the victim's possessions and drove away, the victim fled to a nearby gas station where he called family members for assistance. Later, Jones provided information concerning these events to the police." *State* v. *Davis*, supra, 131 Conn. App. 52–53. The Appellate Court also noted that, "[c]ontrary to the victim's testimony, Jones, who testified on behalf of the state . . . testified that the defendant was the assailant who had pointed a shotgun at the victim's head during the robbery." Id., 53 n.2.[3]

The following facts and procedural history are also relevant to the defendant's appeal. By means of a long form information, the state alleged that the defendant committed the crime of robbery in the first degree in violation of § 53a-134 (a) (4).[4] In count one of its information, the state alleged that "during the commission of the crime [the defendant] was armed with what he represented by his words or conduct to be a firearm . . . ." (Internal quotation marks omitted.) Id., 53.

Subsequently, "[o]n January 4, 2010, the defendant filed six written requests to charge covering different instructions. Although one of these requests to charge bore the title 'Defendant's Request to Charge: Robbery First Degree,' neither this request nor any other submitted by the defendant covered the elements of robbery in the first degree. On January 4, 2010, the state filed a written request to charge that, among other topics, covered the elements of robbery in the first degree. Following the portion of the request to charge that covered the elements of robbery in the first degree, the state cited to '[§] 6.4-1 [of the] Connecticut Selected Jury Instructions.'

"On January 5, 2010, immediately after the state rested, the court held a charge conference with the attorneys . . . . The following is an excerpt from the colloquy that took place during the conference:

" 'The Court: I have received the robbery charge [filed by the state], which is the standard charge. *I intend to give the robbery* [*charge*] *in essence, maybe not exactly*, but the robbery charge will be given. The usual charges, the function of the court and the jury, proof beyond a reasonable doubt, burden of proof, circumstantial and direct evidence, they will be given. [I have] the request for conspiracy. Counsel . . . that's your charge, conspiracy? Yes?

" '[The Prosecutor]: Use the state's conspiracy charge, Your Honor?

" 'The Court: Yes.

" '[The Prosecutor]: Yes.

" 'The Court: Counsel, any objection to the conspiracy charge as presented by—

" '[Defense Counsel]: Your Honor, I have not seen a charge submitted by the state. I . . . could have left it in my office, but I haven't had time to review it. Is it the standard charge? It's robbery?

" '[The Prosecutor]: Throughout the computer. I'm not very fair.

" 'The Court: Right off the cyberspace.

" '[Defense Counsel]: Based upon [the prosecutor's] representation, Your Honor, there's no objection. . . .

"Thereafter, the defendant's attorney made an oral motion for a judgment of acquittal. After hearing argument concerning the motion, the court denied it. Following its ruling, the court asked counsel, 'anything else?' The state replied in the negative and the defendant's counsel did not raise any additional matters for consideration.

"The next day, January 6, 2010, the court addressed counsel, noting that it had received a written motion for a judgment of acquittal from the defendant. After stating that the motion was denied, the court stated, '[a]nything else before the jury comes out?' The defendant's attorney replied, '[n]o, Your Honor.' Following closing arguments, the court delivered its charge to the jury. After it instructed the jury as to the elements of the offenses at issue, the court excused the jury for a recess. The court, addressing counsel, stated: '[T]hat completes the substantive charge. Any comments? Anything I need to correct now? Think about it.' Following the morning recess, the court asked counsel: 'Anything I need to add or detract?' The defendant's attorney replied, 'I have nothing, Your Honor.' After the court delivered the remainder of its charge, the defendant's attorney did not raise any objection related to the court's robbery instruction." (Emphasis added; footnotes omitted.) Id., 56–59.

The jury returned a verdict of guilty on both counts of part one of the information; see footnote 4 of this opinion; and the trial court rendered judgment in accordance with the verdict. The defendant then appealed from the judgment of the trial court to the Appellate Court, claiming, inter alia, that the trial court improperly instructed the jury that it could find the defendant guilty on the basis of a theory of liability that was not set forth in the state's information.[5] Because the defendant did not object to the trial court's jury instructions, he sought review under *State* v. *Golding*, supra, 213

Conn. 239–40.

The Appellate Court declined to review the claim on the ground that the defendant had waived any objections to the trial court's jury charges. It reasoned that the trial court's statement that it intended to give the state's proposed charge, which was available on the Judicial Branch website, "in essence, maybe not exactly," effectively provided the defendant with the proposed instructions. The Appellate Court further reasoned that, because the trial court's jury instructions "mirrored the state's instruction in all material respects"; *State* v. *Davis*, supra, 131 Conn. App. 60; and defense counsel had an opportunity to review those instructions on the Judicial Branch website overnight, counsel's failure to object to the jury instructions constituted an implied waiver under *Kitchens*.

On appeal to this court, the defendant claims that the Appellate Court's conclusion that he implicitly waived his instructional challenges is inconsistent with the implied waiver doctrine in *State* v. *Kitchens*, supra, 299 Conn. 447. Specifically, the defendant asserts that he did not have a meaningful opportunity to review the jury instructions because the trial court did not provide him with an advance written copy of the instructions, and the court's description of the charge it intended to deliver was ambiguous. The state contends that the Appellate Court correctly concluded that defense counsel implicitly waived any challenge to the court's jury instructions. Alternately, the state claims that the Appellate Court's judgment can also be affirmed on the ground that the defendant waived his claims by assenting to the jury instructions.[6]

Whether a defendant waives the right to challenge jury instructions is a question of law over which we exercise plenary review. *State* v. *Mungroo*, 299 Conn. 667, 672–73, 11 A.3d 132 (2011).

In *State* v. *Kitchens*, supra, 299 Conn. 482–83, we concluded that, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." The doctrine of implied waiver is based on the "idea that counsel had sufficient notice of . . . the jury instructions and was aware of their content . . . ." (Emphasis omitted.) Id., 487 n.25. Although the court in *Kitchens* examined the basis for inferring a knowing and voluntary relinquishment of the right to object to jury instructions; id., 483–85; it did not establish a broad waiver provision unmoored from the express requirements set out in that case. Our examination of the record leads us to

conclude that the trial court's failure to provide the defendant with the precise content of the proposed jury instructions deprived him of a meaningful opportunity to review the charge. Accordingly, we hold that the defendant did not implicitly waive his right to challenge the trial court's instructions on appeal under the implied waiver doctrine announced in *Kitchens*.

The Appellate Court concluded that the trial court's stated intention to deliver the charges proposed by the state "in essence, maybe not exactly," met its threshold obligation to "[provide] counsel with a copy of the proposed jury instructions" and to "[allow] a meaningful opportunity for their review . . . ." Id., 482–83. In so concluding, the Appellate Court determined that the trial court's reference to the robbery instruction set forth in the state's request to charge, which was materially similar to the model instruction posted on the Judicial Branch website, but broader than the allegation set forth in the state's information, adequately provided the defendant with the proposed jury instruction and a meaningful opportunity for review. *State* v. *Davis*, supra, 131 Conn. App. 62–63.

We agree with the Appellate Court that "the dispositive factor is whether the court has provided counsel with an opportunity to conduct a meaningful review of its proposed charge so that 'the defendant may be deemed to have knowledge of any potential flaws therein,' " and that "[a]n opportunity for review necessarily entails that the court convey the substance of its charge in such a manner that the parties may review [the] proposed instructional language . . . ." Id., 62. Under the facts of the present case, however, we disagree that the trial court's statement that it intended to deliver the instructions on the Judicial Branch website "in essence, maybe not exactly" met the standard for implied waiver set out in *Kitchens*.

Our review of the record reveals that the only discussion of the jury instructions, prior to the delivery of the charge to the jury, was limited to the state's proposed charge, which defense counsel stated he had not read, and ambiguous references to the model instructions on the Judicial Branch website. Although the court represented that its jury charge would be derived from the model instructions, it was equivocal as to the extent that the charge would conform to the model. We conclude that the trial court's statement that it intended to deliver the model instructions "in essence, maybe not exactly," failed to provide the defendant with adequate notice of the actual content of the court's proposed instructions.[7] Accordingly, defense counsel was not afforded a meaningful opportunity to review the instructions necessary to infer a wilful and knowing waiver of instructional challenges. See, e.g., *State* v. *Brown*, 299 Conn. 640, 659, 11 A.3d 663 (2011) ("[b]ecause we cannot reasonably conclude that counsel was aware in

advance of the instructional deficiency, we will not conclude that the defendant has waived his right to challenge the charge on direct appeal").[8]

The threshold question for our implied waiver analysis is whether the trial court provided the proposed charges to the defendant prior to delivery of its instructions to the jury. Although the Appellate Court correctly noted that "[t]he defendant does not assert that his trial counsel was not provided with a copy of the state's request to charge"; *State* v. *Davis*, supra, 131 Conn. App. 59; the trial court's proposed instructions, not the prosecution's request to charge, is the touchstone of our implied waiver analysis. *State* v. *Kitchens*, supra, 299 Conn. 482–83. It is the trial court's obligation to provide the defendant with the proposed instructions and a meaningful opportunity for review.[9] Accordingly, we reject the state's contention that "[its] request to charge served as the functional equivalent of a copy of the court's draft instructions."

Given the lack of clarity concerning the proposed instructions, the state's argument that the defendant had an opportunity to review the model instructions on the Judicial Branch website overnight is inapposite. Although we have noted that "in every post-*Kitchens* case in which defense counsel was given the opportunity to review the proposed jury instructions overnight, we have concluded that defense counsel had received a meaningful opportunity to review the proposed instructions under the *Kitchens* test"; *State* v. *Webster*, 308 Conn. 43, 63, 60 A.3d 259 (2013); in all of these cases, defense counsel was provided with the actual proposed charges. See, e.g., id., 261–63; *State* v. *Mungroo*, supra, 299 Conn. 673–76; *State* v. *Brown*, supra, 299 Conn. 657–59; *State* v. *Akande*, 299 Conn. 551, 561, 11 A.3d 140 (2011). In contrast, in the present case the trial court's ambiguous reference to the model instructions on the Judicial Branch website failed to put defense counsel on notice of the substance of the proposed instructions. Because the trial court did not provide counsel with the actual proposed instructions, the length of time between the charge conference and the delivery of the instructions to the jury does not inform the question of whether defense counsel had a meaningful opportunity for review.[10]

Our conclusion is consistent with the policies underlying the implied waiver doctrine. First, declining to infer a waiver under the particular circumstances of the present case does not reward the defendant with a second bite at the apple. In *Kitchens*, we explained that permitting a defendant to challenge instructions on appeal after a meaningful opportunity to review "would amount to allowing [the defendant] to . . . ambush the state [and the trial court] with that claim on appeal" after his trial strategy had failed. (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 470.

In the present case, however, the defendant gained no advantage by permitting the state to enlarge upon the theory of liability alleged in its long form information. Although a defendant may implicitly waive objections to jury instructions even without "obvious tactical reasons"; id., 481; the absence of any benefit to the defendant in the present case lends further support to our conclusion that he did not implicitly waive his instructional challenges.

In addition, inferring a waiver under these circumstances is inconsistent with the policy of encouraging meaningful on-the-record charge conferences. *State* v. *Baptiste*, 302 Conn. 46, 57–58, 23 A.3d 1233 (2011). In *State* v. *Kitchens*, supra, 299 Conn. 493–94, we presumed that delivery of jury instructions and a meaningful on-the-record charge conference provided a basis for a defendant's reflection on the proposed charge.[11] The defendant's failure to object to the proposed charges subsequent to these procedural safeguards gave rise to an inference that the defendant knowingly and voluntarily relinquished the right in question. Id. In announcing this rule in *Kitchens*, we sought to encourage these procedures to facilitate meaningful review of jury instructions. See *State* v. *Baptiste*, supra, 57–58. In contrast, expanding the implied waiver doctrine to situations in which a trial court failed to put the defendant on notice of its actual proposed jury instructions would undermine this policy.

Finally, the fact that § 53a-134 (a) (4) incorporates accessory liability is of no consequence to our implied waiver analysis. The jury charge must conform to the specific allegations in the information, not every theory of liability included in the statute under which the defendant is charged. See *State* v. *Peterson*, 13 Conn. App. 76, 83–86, 534 A.2d 1237 (1987). Accordingly, we disagree with the state's contention that the inclusion of accessory liability in the statute put the defendant on notice that the trial court's instructions would include a theory of liability not alleged in the state's information, such that his failure to take an exception can be interpreted as an implied waiver.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the defendant's claim of instructional error.

In this opinion ZARELLA and EVELEIGH, Js., concurred.

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation

clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis omitted; footnote omitted.)

In *State* v. *Kitchens*, supra, 299 Conn. 533–34, we noted: "There is no dispute that, for reasons of strategy, counsel may knowingly and intentionally waive a defendant's constitutional right to a particular jury instruction despite the fundamental nature of the defendant's due process entitlement to an adequate jury charge. . . . In such circumstances, moreover, the defendant cannot satisfy the third *Golding* prong . . . because it cannot be said that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.)

[3] We note that, with respect to the Appellate Court's recitation of the facts that the jury reasonably could have found, the defendant's unpreserved *Golding* claim asserts that there was a reasonable probability that the jury was misled in reaching its verdict, because the court's jury instructions, unlike the state's information, allowed the jury to convict the defendant based on an accomplice theory. In *State* v. *Peterson*, 13 Conn. App. 76, 84, 534 A.2d 1237 (1987), the Appellate Court held that jury instructions permitting conviction under § 53a-134 (a) (2), if the defendant or another participant committed a robbery while armed, violated the defendant's constitutional right "to be informed of the charges against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise," when the state's information alleged that the defendant committed the crime while armed. (Internal quotation marks omitted.) Because "the court's reading of the statute in its entirety created the possibility that the jury convicted the defendant without ever resolving whether the defendant or [the accomplice] held a shotgun on [the victim] during the incident," there was a reasonable probability that the jury was misled. Id., 86; see *State* v. *Gradzik*, 193 Conn. 35, 38, 475 A.2d 269 (1984) ("[t]he trial court cannot by its instruction change the nature of the crime charged in the information").

[4] In a separate count of its two part information, the state alleged that the defendant had conspired to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4). Following a jury trial, the defendant was convicted of both robbery in the first degree and conspiracy to commit robbery in the first degree. The defendant also pleaded guilty to the second part of the information charging him with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) (1) (A). Neither the conspiracy conviction nor the conviction of being a persistent dangerous felony offender is at issue in this appeal.

[5] In count one of its long form information, the state alleged that "during the commission of the crime [the defendant] was armed with what he represented by his words or conduct to be a firearm . . . ."

In conformance with the model instructions on the Judicial Branch website, the court instructed the jury that one of the elements of the crime, to be proven beyond a reasonable doubt by the state, was "that in the course of the commission of robbery or immediate flight therefrom, the defendant or *another participant* in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, shotgun or other firearm. . . .

"If *any person* participating in the crime displayed or threatened the use of what he represented by words or conduct to be a pistol, revolver, shotgun or other firearm while in immediate flight from the crime, then all the participants in the robbery would be just as guilty of first degree robbery as if they had themselves actually done so." (Emphasis added.)

[6] According to the state, defense counsel assented to the court's instruction by stating that he had no objection to the state's request to charge. See *State* v. *Kitchens*, supra, 299 Conn. 475 (describing category of waiver cases in which "defense expressly acknowledged and agreed by words or conduct to the instruction challenged on appeal"). Because, as we describe later in this opinion, we conclude that the defendant was not apprised of the court's proposed instruction, we disagree that he waived any instructional challenges by expressly assenting to the instructions.

[7] We leave for another day the question of whether a definitive statement that a court will use the precise language of instructions available on the Judicial Branch website, or in another reference resource, coupled with its

allowance of sufficient time for counsel to review those instructions, would satisfy the *Kitchens* threshold of advance provision of jury instructions and a meaningful opportunity for review. It is clear that, in the present case, the trial court's statements regarding the instructions did not amount to a definitive assertion that it would use, without alteration, a published and available instruction.

[8] Moreover, defense counsel had a reasonable expectation that the jury charges would be "adapted to the issues and sufficient for the guidance of the jury . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 455. The difference between the state's information and the trial court's instructions in the present case illustrates the purpose of the requirement that the trial court "[provide] counsel with a copy of the proposed instructions" in order to trigger an implied waiver under *Kitchens*. Id., 482.

[9] In *State* v. *Kitchens*, supra, 299 Conn. 495 n.28, we noted that it is the trial court's obligation, in the first instance, to inform defense counsel of the contents of the instructions it intends to give the jury.

[10] In his concurring opinion, Justice Palmer contends that this case "falls squarely within the *Kitchens* waiver doctrine," "that *Kitchens* plainly precludes the defendant's claim of instructional impropriety" and that "*Kitchens* clearly controls this case" to mandate "one, and only one, conclusion . . . ." If anything is indisputable, however, it is that when the trial court stated that the instruction it intended to give on robbery in the first degree would be "in essence, maybe not exactly," the model instruction available on the Judicial Branch website and reproduced by the state in its proposed charge, the court indicated that it would give a charge that *did not* mirror the model instruction in every respect. Accordingly, the precise substance of the intended charge could not have been clear to defense counsel when he agreed to it.

The applicable definition of "essence," which the concurrence does not consult, is "basic underlying . . . substance" or "most significant element, attribute, quality, property, or aspect of a thing . . . ." Webster's Third New International Dictionary (1993) p. 777. The trial court thus implied, by its use of the words "in essence," that its robbery instruction would reflect the model instruction in its most basic or significant substantive aspects, but at the same time, that there would be some alterations, albeit unarticulated ones. This suggestion was amplified by the court's modification of the phrase "in essence" with the qualifying language, "*maybe not exactly* . . . ." (Emphasis added.) Justice Palmer acknowledges this qualifying language, but, nevertheless, disregards its significance.

Given the trial court's statement that it would give the model instruction, "in essence, maybe not exactly," it would not have been unreasonable for defense counsel to presume, when he agreed to the proposed charge, that it would not be the model instruction *verbatim*, but rather, would be a charge that largely was based on the model instruction, yet was tailored to the information in the present case so as to omit any portion that was inconsistent with that document. Contrary to the information, however, the court failed to omit the portion of the model instruction that permitted the jury to convict the defendant on the basis of the display of a firearm by another participant in the crime. At the very least, the court's explanation of the instruction it would deliver was ambiguous, and, therefore, defense counsel's assent to it does not warrant a finding of waiver.

Justice Palmer's agreement with the Appellate Court's analysis does not lead, as one might expect, to the filing of a dissenting opinion in this case. Rather, it is utilized as a springboard to revisit and criticize this court's opinion in *State* v. *Kitchens*, supra, 299 Conn. 447, an opinion with which Justice Palmer continues to disagree. Revisiting the rule established by *Kitchens* in this matter is inappropriate, however, because, as Justice Palmer acknowledges, the issue of that rule's propriety has neither been raised nor briefed by the parties to this appeal. See generally *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 139–40, A.3d (2014).

[11] Although, in *Kitchens*, we emphasized the provision of written instructions to the defendant; *State* v. *Kitchens*, supra, 299 Conn. 485 (highlighting "opportunity to review the charge in writing"); we also stated that an "on-the-record discussion of the challenged instruction" could support an inference of waiver in the appropriate case, even in the absence of a written instruction. Id., 484–85. In the present case, however, the trial court's discussion of the robbery charge at the charge conference was limited to an ambiguous reference to the model instructions on the Judicial Branch website.